UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
AQUA SHIELD, INC.                               |
                                                |
                         Plaintiff,         |        NOT FOR PUBLICATION
                                                |        MEMORANDUM & ORDER
            - against -                  |        05 CV 4880 (CBA)
                                                |
INTER POOL COVER TEAM                           |
                                                |
                        Defendant.          |
--------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE

      Plaintiff Aqua Shield, Inc. ("Aqua Shield") has filed suit against defendant Inter Pool Cover Team ("IPC") alleging, *inter alia*, that IPC has infringed U.S. Patent No. 6,637,160, of which Aqua Shield is the assignee. IPC contends that Aqua Shield has not properly effected service on IPC and that this Court, in any event, does not have personal jurisdiction over IPC. For the reasons below, IPC's motion to dismiss is denied without prejudice.

**I.    Background**

      Aqua Shield is the assignee of U.S. Patent No. 6,637,160 ("the '160 Patent"), which claims telescopic pool enclosures. IPC is a European business entity headquartered in the Czech Republic. IPC markets swimming pool covers which are manufactured by two of IPC's members, Alukov Hz spol. S.r.o. ("Alukoz Hz"), organized under the laws of the Czech Republic, and Alukov, spol. S.r.o. ("Alukov"), organized under the laws of the Slovak Republic. The pool covers, which allegedly infringe the '160 Patent, are distributed by IPC's other members. (See IPC's Responses to Aqua Shield's Interrogatories, dated Dec. 12, 2005.) Currently, IPC does not have any American members but appears to have an American partner, ADG Enterprises. (See Brooks Aff. II ¶¶ 5-6, Exh. B, dated Jan. 9, 2006.) At the

1

commencement of this case, IPC's website indicated that it had two American members, Duo-Guard Industries, Inc. and Gallina USA LLC.  (Brooks Aff. ¶¶ 5-6, Exh. A, dated Oct. 14, 2005).

On July 19, 2005, Alukov Hz sold an allegedly infringing product to Sunshine Pool Products in Utah.  (Def.'s Br. at 5; Brooks Aff. II ¶ 10.)  As of August 16, 2005, Alukov Hz's pool enclosures were advertised for sale in the United States on the website of an American company, Awesome Pool Products.  (See Brooks Aff. II ¶¶ 11-12, Exh. D.)  The website listed the prices of the products.  (Id.)  Awesome Pool Products no longer advertises the allegedly infringing pool covers. (Id. ¶ 13.)  However, IPC maintains a website, accessible in the United States, which describes the pool covers that it sells.  At the commencement of this case, that website contained links to the IPC member websites, such that a customer could enter the Gallina USA website, which in turn contained information, including an email link and a toll-free number, instructing customers how to place an order for an allegedly infringing product.  (See Oct. 25, 2005 Tr. at 17-19.)

On October 18, 2005, Aqua Shield filed a complaint and requested that the Court issue an Order to Show Cause why Aqua Shield should not be granted preliminary injunctive relief.  For the purposes of the Order to Show Cause, this Court granted Aqua Shield permission to serve its complaint upon IPC by email and overnight mail.  On October 26, 2005, the Court denied Aqua Shield's request for a preliminary injunction.  At that hearing, the issue of this Court's personal jurisdiction over IPC was also raised.  The Court ordered limited discovery and briefing on whether this Court has personal jurisdiction over IPC.  Both parties briefed the jurisdictional issues, and oral argument was held on November 13, 2006.

In its briefing on the issue of personal jurisdiction, IPC also argued that Aqua Shield had

failed to properly file service of process in accordance with Rule 4(f) of the Federal Rules of Civil Procedure. In particular, IPC argued that Aqua Shield had not filed service of process upon IPC in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), of which the Czech Republic is a signatory. Accordingly, the Court ordered Aqua Shield to commence service of process in accordance with the Hague Convention and to inform this Court whether it had exercised due diligence in attempting to serve process upon IPC.

The Court treats IPC's request that this case be dismissed (see Def.'s Br. at 1, 18), as a motion to dismiss for lack of personal jurisdiction and insufficient service of process, pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure.

**II.     Discussion**

   **A.     Service of Process**

Service of process upon a foreign corporation may be made "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention" or "by other means not prohibited by international agreement as may be directed by the court." See Fed. R. Civ. P. 4(f)(1), (f)(3), (h). In addition, the 120-day time limit of Rule 4(m) does not apply to service of process made pursuant to Rule 4(f). Instead, courts have used a "flexible due diligence standard" in determining whether service of process under Rule 4(f) is timely. See Burda Media, Inc. v. Blumenberg, No. 97 Civ. 7167, 2004 WL 1110419, at *5 (S.D.N.Y. May 18, 2004); Yellowave Corp. v. Mana, No. 00 Civ. 2267, 2000 WL 1508249, at *2 (S.D.N.Y. Oct. 11, 2000); Travers Tool Co. v. S. Overseas Express Line, Inc., No. 98 Civ. 8464, 2000 WL 194781, at *1 (S.D.N.Y. Feb. 17, 2000).

In the instant case, Aqua Shield commenced service of process in accordance with the Hague Convention and Rule 4(f)(1). Although Aqua Shield did not commence such service until after this Court's Order to Show Cause, this Court finds that Aqua Shield was diligent in serving process. Rule 4(f)(3) allows service of a complaint on foreign corporations "by other means not prohibited by international agreement as may be directed by the court." This Court permitted the initial Order to Show Cause, regarding the requested preliminary injunction, to be served on IPC by e-mail and registered overnight mail, return receipt requested, on or before October 19, 2005. The Court did not indicate that such service could substitute for service of the complaint in accordance with the Hague Convention under Rule 4(f)(1). However, this Court also did not expressly inform Aqua Shield that it was required to separately file service of the complaint upon IPC in accordance with the Hague Convention. As the Hague Convention does not prohibit service by overnight mail, return receipt requested, Aqua Shield was not unreasonable in presuming that proper service of process had been effected. Furthermore, it is clear that IPC did receive notice of the complaint and has not been prejudiced by any defects in service of process. Finally, "the Second Circuit strongly prefers that litigation be resolved on the merits, rather than by dismissal." In re Initial Public Offering Sec. Litig., 358 F. Supp. 2d 189, 209 (S.D.N.Y. 2004) (citing Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995)). Accordingly, the Court declines to dismiss the case on service of process grounds.

**B.     Personal Jurisdiction**

**1.     Standard of review**

The plaintiff has the burden of establishing that the Court can exercise personal jurisdiction over the defendant. See, e.g., Marine Midland Bank, N.A. v. Miller, 664 F.2d 899,

904 (2d Cir. 1981). If jurisdiction is challenged prior to discovery, the plaintiff may defeat the motion by a good-faith pleading of legally sufficient allegations. See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). However, once discovery regarding a defendant's contacts with the forum is conducted, the plaintiff bears a heavier burden. See e.g., Bank Brussels Lambert v. Fidler Gonzalez & Rodriquez, 171 F.3d 779, 784 (2d Cir. 1999) ("Where as here, however, the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held, the plaintiff's prima facie showing . . . must include an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." (quoting Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d. Cir. 1996) (internal quotations omitted)). In the instant case, Aqua Shield was afforded discovery in the form of interrogatories, but did not have the opportunity to engage in discovery of documents or to take depositions. No evidentiary hearing has been held. Thus, Aqua Shield's burden is somewhat higher than if no discovery had been afforded, but is not so high as if extensive jurisdictional discovery had taken place.

### 2. Jurisdiction under New York C.P.L.R. § 302(a)(3)

Aqua Shield contends that this Court has personal jurisdiction over IPC under Rule 4(k)(2) of the Federal Rules of Civil Procedure, or, alternatively, under Section 302(a)(3) of the New York Civil Practice Law and Rules.

Rule 4(k)(2) provides that:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

5

Thus, Rule 4(k)(2) confers personal jurisdiction over someone who is not subject to personal jurisdiction in any state, but who has minimum contacts with the United States as a whole, such that personal jurisdiction is proper under the Due Process Clause of the Fifth Amendment. See Dardana Ltd. v. Yuganskneftegaz, 317 F. 3d 202, 207 (2d Cir. 2003) (citing Chew v. Dietrich, 143 F.3d 24, 27-28 (2d Cir. 1998)).

As Rule 4(k)(2) only may be invoked if the defendant is not subject to the jurisdiction of any of the fifty states, the Court must first address whether it has personal jurisdiction in New York. See Graphic Controls Corp. v. Utah Medical Products, Inc., 149 F.3d 1382, 1385 (Fed Cir. 1998) (noting that "[d]etermining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due process"). This case arises under 35 U.S.C. § 271, which is silent as to service of process. Thus, the Court looks to the jurisdictional statutes of New York to determine whether personal jurisdiction may be asserted over IPC, an out-of-state defendant. See generally Omni Capital Int'l v. Rudolf Wolff & Co., Ltd., 484 U.S. 97 (1987).

Under Section 302(a)(3) of the New York Civil Practice Law and Rules, New York courts may exercise in personam jurisdiction over a tortfeasor whose tortious act committed outside of New York causes injury to a person or property in New York, where the tortfeasor should have reasonably expected the act to have consequences in New York and derives substantial revenue from international commerce. N.Y. C.P.L.R. § 302(a)(3). Patent infringement, whether direct or contributory, is a tort. Carbice Corp. of Am. v. Am. Patents Dev. Corp., 283 U.S. 27, 33 (1931). However, even presuming that Aqua Shield's allegations of

6

patent infringement by IPC are true, Aqua Shield has not demonstrated that IPC's actions caused an injury in New York. "The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001) (internal citations omitted); see also Am. Network, Inc. v. Access Am./Connect Atlanta, Inc., 975 F.Supp. 494, 497 (S.D.N.Y. 1997) ("[I]t is not sufficient to satisfy section 302(a)(3) that a plaintiff is located in New York and lost profits there.") (citing Fantis Foods, Inc. v. Std. Importing Co., 49 N.Y.2d 317 (N.Y. 1980)). Rather, jurisdiction "must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." Fantis Foods,, 49 N.Y.2d at 326.

In this case, Aqua Shield has not asserted anything more than indirect financial losses resulting from its residence in New York. Aqua Shield's complaint asserts that IPC has infringed its patents and induced infringement of those patents. Under the law of the Federal Circuit, the situs of injury "is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee." MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1377 (Fed. Cir. 2005). Furthermore, "[e]conomic loss occurs to the patent holder at the place *where the infringing sale is made* because the patent owner loses business there." Id. (emphasis and alteration in original) (quoting Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1571 (Fed. Cir. 1994)). However, Aqua Shield has not asserted that IPC sold an infringing product in New York. Neither has Aqua Shield asserted that IPC induced the sale of an infringing product by a third party in New York, nor that it has

induced an infringing offer to sell in New York by a third party.

Furthermore, Aqua Shield does not appear to have asserted that IPC made an offer to sell an infringing product in New York. In order to find an "offer to sell," the "defendant must communicate a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." MEMC, 420 F.3d at 1376 (internal quotations omitted). In the context of analyzing whether a court has personal jurisdiction over a defendant, the Federal Circuit has held that an "offer to sell" has been made "where the defendant manufacturer had communicated to prospective buyers both a description of the product and 'a price at which it can be purchased.'" HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1308 (Fed. Cir. 1999) (quoting 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1379 (Fed. Cir. 1998)).

Aqua Shield's allegations do not support a finding of an offer for sale in New York. Although Aqua Shield asserts that IPC made an offer for sale of an infringing product in the United States, Aqua Shield does not explicitly state that an offer to sell was made in New York. Rather, Aqua Shield obliquely states that IPC maintains a website, which is accessible in New York, where IPC "offers for sale to potential customers of Aqua Shield" allegedly infringing pool covers, "actively seeks distributors" for allegedly infringing pool covers and provides these "would-be" distributors with the means to sell infringing pool covers. (Pl.'s Br. at 12.) Aqua Shield also does not assert that IPC has communicated to prospective buyers in New York a price at which the products can be purchased, and IPC's website does not give prices of its products or expressly indicate that those products may be purchased by persons in New York. Furthermore, Aqua Shield has not shown how IPC has manifested to any potential buyers in

8

New York a willingness to enter into a bargain. Instead, Aqua Shield seems to rely on its allegations of infringement within the United States generally, as opposed to New York specifically.

The only possible assertion by Aqua Shield that would support its claim for jurisdiction in New York is a statement by Bob Brooks, Aqua Shield's Chief Executive Officer, in which he asserts that IPC's website continues to offer telescopic pool enclosures for sale and that "one of [Brooks'] customers managed to re-negotiate [a] price just because a competitor was selling the same product in the U.S. at a lower price." (Brooks Aff. II ¶ 19.) However, this bare statement is insufficient to show that Aqua Shield has suffered economic consequences in New York as a result of tortious acts by IPC. The affidavit does not indicate who the customer was and whether the customer was located in New York or made a purchase from Aqua Shield in New York; who the competitor was, whether the competitor was IPC, one of its distributors, or one of its members; or whether the customer had been made an offer to sell by the competitor or had been informed of the competitor's presence in the United States by a third party. Accordingly, for the foregoing reasons, this Court does not have in personam jurisdiction over the instant case under section 302(a)(3).

### 3. Jurisdiction under Fed. R. Civ. P. 4(k)(2)

Aqua Shield argues in the alternative that jurisdiction is available under Rule 4(k)(2). Rule 4(k)(2) acts as a federal long-arm statute, allowing any federal court to exercise jurisdiction over a case where the plaintiff's claim arises under federal law, the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and the federal court's exercise of personal jurisdiction over the defendant does not offend the Constitution or other federal law.

See United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 38 (1st Cir. 1999).

### a. Due Process

The first question in determining whether this court can exercise personal jurisdiction over IPC under Rule 4(k)(2) is whether IPC has sufficient minimum contacts with the United States as a whole, such that the exercise of personal jurisdiction does not run afoul of the due process clause of the Fifth Amendment. That is, there must be "minimum contacts" with the United States as a whole (as a opposed to a particular constituent state) to justify the court's exercise of personal jurisdiction, and the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement, 326 U.S. 310, 316 (1945); see also Electronics For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003) ("Under the governing framework of personal jurisdiction, as developed in the Supreme Court jurisprudence, the exercise of jurisdiction over nonresident defendants of a forum state is not inconsistent with due process if the nonresident defendants have certain "minimum contacts" with the forum. . . ."); Mwani v. Bin Laden, 417 F.3d 1, 11-12 (D.C. Cir. 2005) ("Whether the exercise of jurisdiction is 'consistent with the Constitution' for purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment."). Accordingly, the Due Process Clause requires that an entity have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977)) (alteration in original); see also Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1995). Fair warning requires that

"the defendant's conduct and connection with the forum . . . are such that he should reasonably anticipate being hauled into court there," often referred to as "purposeful availment." Burger King Corp., 471 U.S. at 474-75 (internal quotations omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Id. at 475 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). The exercise of jurisdiction is favored where the plaintiff has made a threshold showing of the defendant's minimum contacts, but may be defeated where the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477.

In determining whether there are sufficient contacts, a distinction is made between "specific" jurisdiction, where the suit arises out of or is related to the defendant's contacts with the forum, and "general" jurisdiction, which is based on the defendant's general business contacts with the forum and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 and nn. 8-9 (1984); Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc., 444 F.3d 1356, 1360-61 (Fed. Cir. 2006). Courts impose a more stringent contacts test when general jurisdiction is asserted–generally requiring that the contacts be "continuous and systematic." See Helicopteros Nacionales de Colombia, 466 U.S. at 415-16. Aqua Shield has not explicitly stated whether it is asserting general or specific jurisdiction. However, because all of the U.S. contacts identified by Aqua Shield relate to IPC's attempts to market and sell its pool products–including the two infringing products–in the U.S., and because the alleged injury in this case results from exactly that, the Court assumes that specific

11

jurisdiction is being asserted.

Aqua Shield argues that IPC has sufficient contacts with the United States as a whole to warrant jurisdiction under Rule 4(k)(2). In particular, Aqua Shield makes the following factual assertions:

1)  At the commencement of this case, IPC's website indicated that it had two American members, Duo-Guard Industries, Inc. and Gallina USA LLC. (Brooks Aff. II ¶¶ 5-6, Exh. A, dated October 14, 2005); IPC's website subsequently indicated the existence of an "American partner," ADG Enterprises. (Brooks Aff. ¶¶ 5-6, Exh. B.)
2)  IPC attended at least three pool and spa exhibitions in the United States, in Nevada in 2004, in Florida in 2005, and in New Jersey in 2006. At the Florida exhibition, IPC invited attendees to "Join the team!" claiming "IPC Pool Team, the world's largest integrated network of manufacturers and dealers, now includ[es] the U.S. market." (Brooks Aff. II, Exh. F.)
3)  IPC maintains a website, accessible in the United States, on which its pool covers are marketed.
4)  One of the members of IPC, Alukov Hz, sold an accused product to Sunshine Pool Products in Utah. (Brooks Aff. II ¶ 10.)
5)  As of August 16, 2005, Alukov Hz's pools enclosures were advertised for sale in the United States by an American company, Awesome Pool Products. (Brooks Aff. II ¶¶ 11-12, Exh. D.)
6)  In a Czech newspaper article, Jan Zitko, the owner of Alukov Hz, declared that he intends to enter the American market and that he was preparing to form "a joint venture with a U.S.-based firm." (Brooks Aff. II, Exh. C.)

Thus, Aqua Shield argues that IPC has "purposefully directed" its activities at the U.S. as a whole.[1] IPC argues that due process has not been satisfied because maintaining a website, which provides no means for purchasing the accused products, is insufficient to establish purposeful availment for purposes of due process. (Def.'s Br. at 15 (citing 3D Systems, 160 F.3d

---

[1] Subsequent to the parties' briefing on the issue of personal jurisdiction, counsel for Aqua Shield submitted a supplemental declaration attaching various printouts from IPC's website, asserting that they indicate further contacts with the United States. Those website printouts included a printout which indicates that "[t]he IPC Team sells enclosures in over 30 countries," including the United States, and a printout that indicates that ADG Enterprises is a "representative of Interpool Cover Team (IPC) for the USA."

at 1380 and <u>Aqua Prods., Inc. v. Smartpool, Inc.</u>, No. 04 Civ. 5492, 2005 WL 1994013, at *5-6 (S.D.N.Y. Aug. 18, 2005 )).) In addition, IPC argues that personal jurisdiction cannot be predicated upon the actions of Alukov Hz, as it is merely a member of the IPC association and IPC does not control its actions. (<u>Id.</u> at 16 (citing <u>Donatelli v. Nat'l Hockey League</u>, 893 F.2d 459 at 468-70 (1st Cir. 1990); <u>Brotherhood of Locomomtive Eng'rs and Trainmen v. United Transp. Union</u>, 413 F. Supp. 2d 410 (E.D.Pa. 2005).)

However, the actions of IPC as an entity, combined with the actions of its primary members, Alukov and Alukov Hz, support the exercise of personal jurisdiction in the United States. Although maintaining a website on which products are described is insufficient grounds upon which to find purposeful availment, IPC has additionally entered the United States, on at least three occasions, to attend pool and spa exhibitions. In addition, IPC has sought out relationships with at least three American companies. IPC argues that it does not have any American members, claiming that its contract does not identify any American members. However, a former version of IPC's website clearly identified at least two American members, and the current website identifies at least one American partner, ADG Enterprises. Furthermore, at least one of IPC's founding members, Alukov Hz, has sold allegedly infringing products in the United States. Thus, unlike the plaintiff in <u>Donatelli</u>, Aqua Shield is not trying to assert personal jurisdiction based solely on the presence of a member of an association in the forum.[2] Rather, it is asserting jurisdiction based upon the activities of the organization in the forum, namely attending trade shows at which distributors were allegedly sought out, maintaining a website,

---

[2] Moreover, in <u>Donatelli</u>, the plaintiff was seeking to establish general, as opposed to specific, personal jurisdiction. 893 F.2d at 462-63.

and the activities of the association members in the forum such as the sale of an allegedly infringing product by a founding member of the association.

In short, these allegations support a finding that IPC has purposefully availed itself of the U.S. market for pool-related accessories, and it has therefore established sufficient contacts with the United States to warrant this Court's exercise of specific personal jurisdiction. In addition, IPC has not demonstrated that it would be unfair or unreasonable to subject it to suit in the United States. As a result, due process is not violated by this Court's exercise of personal jurisdiction over IPC.

### b. Is jurisdiction proper in any other state?

Having determined that exercising jurisdiction over IPC does not offend due process, the question remains whether Rule 4(k)(2) applies, that is, whether the defendant "is not subject to the jurisdiction of the court of general jurisdiction of any state" such that jurisdiction is therefore proper in this Court. Neither the Federal Circuit nor the Second Circuit has determined whether the plaintiff bears the burden of proving that jurisdiction is not proper in any other state under Rule 4(k)(2). The First Circuit, addressing this issue, has held that although the plaintiff should not have "to prove a negative fifty times over," it is not proper to "assign[] the burden of proof on the Rule 4(k)(2) negation requirement to defendants." Swiss American Bank, 191 F.3d at 40-41. Doing so, the First Circuit stated, "threatens to place a defendant in a 'Catch-22' situation, forcing it to choose between conceding its potential amenability to suit in federal court (by denying that any state court has jurisdiction over it) or conceding its potential amenability to suit in some identified state court." Id. at 41(citing Dora A. Corby, Comment, Putting Personal Jurisdiction Within Reach: Just What Has Rule 4(k)(2) Done for the Personal Jurisdiction of

14

Federal Courts?, 30 McGeorge L.Rev. 167, 196 (1998)).

Accordingly, the Swiss American Bank court created a "burden-shifting framework" based upon the "somewhat analogous problems of proof in the discrimination context." Id. at 40. Thus, a plaintiff seeking to invoke Rule 4(k)(2) must make a prima facie case for the applicability of the rule: "(1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements." Id. Furthermore, the plaintiff "must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." Id. Once the plaintiff makes out his prima facie case, "the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient." Id. (citing Stephen B. Burbank, The United States' Approach to International Civil Litigation: Recent Developments in Forum Selection, 19 U. Pa. J. Int'l Econ. L. 1, 13 (1998) (suggesting a broad outline for a similar burden-shifting regime vis-à-vis the Rule 4(k)(2) negation requirement)).

Citing to another line of cases, however, Aqua Shield argues that as long as IPC does not concede to jurisdiction in another state, this Court may use Rule 4(k)(2) to confer jurisdiction. See, e.g., Mwani, 417 F.3d at 4; Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 651 (5th Cir. 2004); ISI Int'l, Inc. v. Borden Ladner Gaervais LLP, 256 F.3d 548, 552 (7th Cir. 2001). As the Seventh Circuit explained in ISI International:

> Constitutional analysis for each of the 50 states is eminently avoidable by allocating burdens sensibly. A defendant who wants to preclude use of Rule 4(k)(2) has only to

15

> name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2) . . . . This procedure makes is unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

256 F.3d at 552; see also Adams, 364 F.3d at 646 ("We agree with the Seventh Circuit"); Mwani, 417 F.3d at 11 ("We find this resolution eminently sensible, and . . . adopt the Seventh Circuit's view."). Although neither the Federal Circuit nor the Second Circuit has not adopted the First or the Seventh Circuit approach, the First Circuit's burden-shifting regime has been adopted by at least one other court in this Circuit. See Porina v. Marward Shipping Co., Ltd., No. 05 Civ. 5621, 2006 WL 2465819, at *3-4 (S.D.N.Y., Aug. 24, 2006). Furthermore, under ISI International and its progeny "the Court does not have to consider personal jurisdiction in each of the fifty states and the Court is *entitled* to use Rule 4(k)(2), but these cases do not hold that the burden *must* be shifted to the Defendant." Porina, 2006 WL 2465819, at *4 (emphasis in original). Rather, where, as here, the "Defendant does not concede that it is subject to personal jurisdiction in some other state, the better authority holds that Plaintiff is not relieved of its burden under Rule 4(k)(2) of establishing that there is personal jurisdiction." Id. (internal citation omitted).

In the instant case, Aqua Shield has demonstrated that the claim arises under federal law, the patent statute, and that personal jurisdiction is not available under that statute. Furthermore, Aqua Shield has shown that IPC's contacts with the nation as a whole are sufficient to satisfy due process. However, Aqua Shield has not certified that IPC is not subject to suit in the courts of general jurisdiction of any state.

Accordingly, Aqua Shield must "certify that, based on the information that is readily

available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." Swiss American Bank, 191 F.3d at 41. Aqua Shield has until January 4, 2008 to make such certification to this Court. If Aqua Shield fails to make such a certification, the Court will grant IPC's motion to dismiss for lack of personal jurisdiction.

However, if Aqua Shield makes such a certification, IPC will then be granted the opportunity to produce evidence to show that "one or more specific states exist in which it would be subject to suit." Id. IPC has until February 4, 2008 to make such a showing to this Court.

SO ORDERED.

Dated: Brooklyn, New York
December 7, 2007

Carol Bagley Amon
United States District Judge